IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 12 |
| | ) | |
| KEITH'S TREE FARM | ) | Case No. 13-71316 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | _____ |
| KEITH'S TREE FARM | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Adversary Proceeding No. 13-07039 |
| | ) | |
| GARNETT WAYNE COX, individually | ) | |
| and as Trustee of the Cox Living Trust | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM DECISION

This adversary proceeding presents a number of legal and evidentiary issues, only some of which will be addressed in this decision. This most critical issue is whether a lease of farming property owned by the Defendants was validly terminated by them before the filing of the Debtor's Chapter 12 case. The Court concludes that the failure of the property owners to make a demand for payment for unpaid rent due under the lease before notifying the Debtor that the lease had been terminated means that such notice of termination was ineffective.

Keith's Tree Farm (Keith's), a Virginia general partnership comprised of Curtis Keith, Larry Keith and Terry Keith, entered into an agreement which was titled "Contract" dated February 4, 2005 (the Contract) with Garnett W. Cox and Susan S. Cox, Trustees of the Cox Living Trust (the Trust), providing for a ten year lease of eighty acres of farmland located in Wythe County, Virginia owned by the Trust, for the purpose of growing and harvesting evergreen trees. The Contract was drafted by the Trustees of the Trust. Under its provisions

Keith's agreed to pay in advance minimum rental of $5,000 by April 30 of each year, beginning with April of 2005. Keith's also bore the responsibility for planting, fertilizing, maintaining and harvesting the trees located on the Cox property. In addition to the minimum annual rental of $5,000, Keith's also agreed to pay the Trust $1.50 per each cut and removed tree harvested during the term of the lease and $2.25 for each tree which was dug up and removed from the property. According to Exhibit A offered into evidence by the Trust, 67,626 trees had been planted on the Cox farm as of 2009. The provisions setting up the monetary obligations of the Debtor under the agreement read as follows:

> To secure this agreement an annual minimum payment of $5000.00 (five thousand dollars) shall be paid on or before April 30th each year beginning April 30, 2005. It is further agreed that payment will be made for each tree harvested within 30 days of harvest in the amount of $2.25 per tree that is dug or $1.50 per tree that is cut and removed from the premises. Prepayment of annual rental may be made at any time and in any amount greater than the minimum amount. These annual payments are being prepaid each year prior to time of tree harvesting and shall be deducted from the gross amount due to landowners from the tree farmers. . . .
>
> Keith Tree Farms hereby agrees to perform all terms of this contract to include the following provisions:
>     1) Make annual minimum payments of $5,000.00 (five thousand dollars) on or before April 30th, each year during contract term of 10 (ten years) beginning in 2005, with the last payment due April 30, 2014.
>     2) At time of harvest, furnish a count of trees removed and specify method of removal, i.e. Cutting of [sic] digging so that an accurate count can be estavlished [sic] for payment to be made within 30 days of removal of trees from the premises at the rate of $1.50 (one dollar fifty cents) per cut tree and $2.25 (two dollars twenty-five cents) per dug tree.

Contract, at 1-2, Exhibit 1. The Contract did not contain any "time is of the essence" provision.

The default provisions of the agreement read as follows:

> It is understood that failure to perform any of the above stated provisions will constitute a breach of this contract and will lead to legal action to compensate the landowner for said damages. Any payment not received on time as previously stated per this agreement or in the amount so agreed upon shall constitute a breach of the agreement and will void the contract. Failure of payment will make remaining tree crop property of Cox Living Trust.

Contract, at 2, Exhibit 1.

The evidence is to the effect that the Debtor made six annual $5,000 payments, each of them by check, to the Trust in early May of the years 2005 through 2010, which in each case were accepted by the Trust without protest even though strictly speaking they had not been made prior to the April 30 due date specified in the agreement. In 2011, however, this pattern changed. The evidence indicates that on May 2, 2011 Mr. Curtis Keith withdrew $5,000 in cash from the partnership checking account. He testified that he paid this money to Mr. Cox, but did not obtain a receipt from him for the payment. Mr. Cox flatly denies that any such cash payment was made. No other contemporaneous business, banking or tax records were introduced by either party which would provide any corroboration to either version of what occurred. Neither was any evidence offered to suggest that Mr. Cox made any complaint to the Debtor that the required annual rental amount had not been paid when due or within a reasonable time thereafter. The evidence does disclose that on December 7, 2011 the Debtor did make a $5,000 payment to the Trust by means of a check containing on the memo line the words, "annual land rental." Under the terms of the agreement, the partnership was authorized to make the annual minimum rent payments in advance. Mr. Curtis Keith testified that this check was an advance payment for 2012. According to the testimony of Mr. Cox, however, this payment was instead a late payment of the 2011 rent.

The parties agree that no payment of annual rent was made to the Trust during 2012. There is no indication, however, that the Trustees of the Cox Trust ever made any demand upon the lessee during that year for the payment of the rent which, according to their evidence, had not been paid, either in advance, when due, or after becoming delinquent.  The parties agree that Keith's also did not make the required annual minimum payment due by April 30, 2013, although they disagree about the circumstances surrounding that failure.  According to both Curtis Keith and Terry Keith the former went to Mr. Cox at about the time the 2013 payment was due and told him that a couple of Keith's customers had given checks upon which payment had been dishonored and that he did not have the money needed to pay for both fertilizing and spraying the trees and paying the annual rent payment and that Mr. Cox told him to take care of the trees first.  Mr. Cox, on the other hand, denies that he gave any such instruction or made any agreement to defer the rental payment which was due to the Trust.  Both parties agree that some subsequent conversations occurred about the rent payment and when the Trust could expect to receive its money.  Although Mr. Cox did testify that he regularly asked when he would get his money, he did not claim that at any time he had ever made a demand for payment upon penalty of termination of the lease.  Mr. Cox engaged legal counsel who prepared a letter dated August 6, 2013 to Keith's, c/o Curtis Keith, which he had served on Mr. Keith on December 9, 2013. The letter read as follows:

> Please be advised that this firm represents Wayne Cox and Susan Cox, Trustees of the Cox Living Trust.  This letter is to advise you that, as a result of your material breach of the above-referenced contract, the Trustees have voted to terminate the same effective immediately.  Your failure to timely make payment for the past two year's harvests in accordance with the contract's specific provisions are specifically alleged as the basis for this declaration.

> You are directed that you have ten days from the date of your receipt of this letter to remove any equipment, tools or personal belongings that are located upon the real property of the Cox Living Trust. You are further advised that, other than for the removal of your belongings during the course of this limited time frame, you are directed not to trespass upon the eighty (80) acre parcel that is the subject of this contract. Any breaches of this notice could subject you to criminal penalty. This notice should, in no way, be considered as a waiver of any rights the Cox Living Trust may have pursuant to the reclamation provisions of the contract. Rather, your obligations to reclaim the land will remain in full force and effect pending the scheduling of the same by this office and you or your legal counsel. The Cox Living Trust reserves any and all rights and remedies afforded to it by law as a result of your breach.

Exhibit B. According to the testimony of Curtis Keith, he immediately called Mr. Cox and asked, "Why are you doing this to me?" He further stated he told Mr. Cox that, if necessary, he could borrow the needed funds from his mother-in-law to make the payment but that Mr. Cox replied that it was "too late" and the lease was terminated. Less than a week later Keith's filed a Chapter 12 bankruptcy petition in this Court on August 14, 2013 and filed this adversary proceeding against Mr. Cox, individually and as Trustee of the Cox Living Trust, on August 29, 2013. During the pendency of this adversary proceeding the parties agreed upon terms of a limited injunction allowing Keith's back on the Trust property pending the November 20 hearing upon specified terms, the provisions of which are not necessary to relate for the purpose of this decision. At that hearing counsel for the Trust stipulated as to the jurisdiction of this Court to determine whether the Contract had been validly terminated prior to the filing of the bankruptcy case.

According to Exhibit A prepared by Mr. Cox and introduced into evidence at the hearing, the Trust claimed the following amounts to be owing from Keith's as of the date of the hearing on November 20:

5

| | |
|---|---:|
| Trees damaged by vehicle in 2011 | $ 454.50 |
| 12/15/2011 - 871 trees cut @ $1.50 | 1,306.50 |
| 12/20/2012 - 4,663 trees cut @ $1.50 | 6,994.50 |
| 5/01/2012 - Lease payment not made | 5,000.00 |
| 5/01/2013 - Lease payment not made | 5,000.00 |
| 11/12/2013 - 6,724 trees cut for "tips" @ $1.50 | 10,086.00 |
| 11/17/2013 - 2,878 trees cut for "tips" @ $1.50 | 4,317.00 |
| | $33,158.50 |
| | |
| 1/02/2012 - Payment received for 561 trees | 841.50 |
| 11/20/2013 TOTAL CLAIMED DUE | $32,317.00 |

## CONCLUSIONS OF LAW AND DECISION

This Court has jurisdiction of this matter by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on July 24, 1984 and Rule 3 of the Local Rules of the United States District Court for the Western District of Virginia. The determination of whether any purported property interest is property of the bankruptcy estate and therefore subject to an order to "turn over" property of the estate is a "core" bankruptcy proceeding pursuant to 28 U.S.C. § 157(b)(2)(E). Counterclaims by the estate against persons filing claims against the estate are also "core" proceedings pursuant to sub-paragraph C of that section. The Court concludes also that it has the constitutional authority to enter a final judgment, subject to normal appeal rights, in this adversary proceeding.

The Court concludes that under the evidence no "demand" for payment was ever made by the Trustees of the Trust against Keith's for the amounts past due under the terms of the lease and that under the decision of the Supreme Court of Virginia (then the Supreme Court of Appeals) in the case of *Johnston v. Hargrove*, 81 Va. 118, 1885 WL 4162 (1885), such a demand was necessary before the Trust could declare a forfeiture of the lease, irrespective of the

provisions of the Contract which purported to "void" the contract for any failure of a payment obligation under the lease. The Court enunciated the governing principles as follows:

> This is a case of an alleged forfeiture, and since forfeitures are never favored in the law, it is an ancient rule of the common law, that before the lessor can exercise a stipulated right of re-entry for breach of covenant to pay rent, he must make *an actual demand* upon the tenant for payment thereof, unless by special agreement between the parties the requirement of demand has been dispensed with. . . .
>
> And it seems that a clause of re-entry for non-payment of rent is in general considered as a mere *security* for the rent, and that a forfeiture will not be enforced, although demand for the rent be made; provided, the tenant satisfies the rent due, and compensates the landlord for any damages he may have sustained in consequence of the former's default.

1885 WL 4162, at *2-3 (emphasis appearing in original in both instances). The above quoted language was also quoted with approval by the United States Court of Appeals for the Fourth Circuit in the case of *Galvin v. Southern Hotel Corp.*, 154 F.2d 970, 973 (4th Cir. 1946), a case, like the one before this Court, dealing with a lease of real property and in which the Court of Appeals reversed a decision of the District Court which had given effect to language in the lease providing for termination of the lease for non-payment when due. The case before this Court clearly involves a disfavored forfeiture in light of the facts that Keith's had made a major investment in the value of the lease by planting and then fertilizing and maintaining over 60,000 trees on the property owned by the Trust for more than eight years before the lease was declared to be terminated. To enforce a forfeiture declared without a prior demand under these circumstances would be grossly inequitable without giving the Debtor a fair opportunity to cure its deficiencies in performance of its financial obligations under the Contract.

Having determined that the Contract was not terminated and remained in effect, it is necessary for the Court to determine issues raised by the parties as to what amounts are now due and payable under the Contract. The Court is left unpersuaded that the preponderance of the evidence establishes either that Keith's did make or did not make the purported $5,000 payment in cash in 2011. The Court concludes that the burden of proving a disputed payment rests upon the party claiming to have made the payment and further that such burden has not been carried by Keith's as to this payment. Accordingly, the Court concludes that the evidence only establishes that one $5,000 payment was made in that year, which was by means of the December 7, 2011 check. Therefore such check will not be treated as a prepayment of the 2012 annual rent.

One remaining question to be addressed in this decision is whether payment for any cut or dug up trees harvested during the term of the lease is to be credited with the annual minimum rent payment made in that year or in any prior year during the term of the lease. The Court will treat Exhibit A as the Trust's acknowledgment that Keith's had made the $5,000 required payments for the years 2005 - 2010, which would be a total of $30,000. The governing language of the Contract is as follows: "These annual payments are being prepaid each year prior to time of tree harvesting and shall be deducted from the gross amount due to landowners from the tree farmers." Mr. Cox in his testimony at the hearing stated that he understood this language to mean that the "gross amount due" referred to the total amount determined to be due at the end of the lease term. On the other hand, counsel for Keith's argues that this same calculation should be made with respect to any trees harvested during the term of the lease so that the lessee will be credited with all advance minimum payments made to that point in time. Either interpretation is

possible, but the Court agrees with the well established principle cited by counsel for Keith's that uncertain language is to be interpreted against a party determined to have drafted that language. Here the Trustees acknowledge that the Contract was drafted by them. Accordingly, the Court concludes that the interpretation of the language in question advanced by counsel for Keith's is supported. Even interpreted neutrally, however, the Court concludes that such interpretation is more reasonable and makes better sense. Otherwise the lessee could end up being responsible to pay more rent during the lease than the amount that it would ultimately be determined to owe at its conclusion, which seems illogical and potentially unjust. Payment of the minimum rent payments due for 2012 and 2013 in the aggregate amount of $10,000 in addition to the $30,000 previously paid will result therefore in total advance rent paid to the Trust in the amount of $40,000, which exceeds the amount claimed by Mr. Cox to be due as of November 20, 2013. The Court understands, however, that Keith's continued harvesting trees and parts of trees for some period of time following the November 20 hearing date and, therefore, that some supplemental determinations by the Court may be needed if the parties are not able to resolve their remaining differences after the Court's present ruling on the three principal issues presented by this dispute.

      An order in accordance with the provisions of this Memorandum Decision will be entered contemporaneously herewith.

      DECIDED this 11th day of December, 2013.

_____
UNITED STATES BANKRUPTCY JUDGE